**SO ORDERED.**

**SIGNED this 28 day of June, 2019.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-02470-5-DMW |
| LEE ROY THOMAS IV | CHAPTER 7 |
| DEBTOR | |
| KAREN THOMAS | |
| PLAINTIFF | ADVERSARY PROCEEDING NO. |
| vs. | 18-00095-5-DMW |
| LEE ROY THOMAS IV | |
| DEFENDANT | |

**MEMORANDUM ORDER AND OPINION**
**REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter comes before the court upon the Motion for Summary Judgment and Incorporated Memorandum of Law ("Plaintiff's Summary Judgment Motion") filed by Karen Thomas ("Plaintiff") on February 1, 2019 and the Motion for Summary Judgment and Incorporated Memorandum of Law ("Defendant's Summary Judgment Motion") filed by Lee Roy Thomas IV ("Defendant") on February 22, 2019. The court conducted a hearing on April 15, 2019 in Raleigh,

North Carolina. Benjamin R. Eisner, Esq. appeared for the Plaintiff, and Jonathan E. Friesen, Esq. appeared for the Defendant. After consideration of the undisputed facts, applicable law, and arguments of counsel, the court denies the Plaintiff's Summary Judgment Motion and grants the Defendant's Summary Judgment Motion.

## STATEMENT OF THE CASE

The Defendant filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code[1] on May 16, 2018. The Defendant received a discharge pursuant to § 727 on August 27, 2018.

On August 21, 2018, the Plaintiff initiated this adversary proceeding by filing a Complaint seeking the determination that certain alleged debts owed by the Defendant to the Plaintiff are excepted from discharge pursuant to § 523(a)(15). On October 22, 2018, the Defendant filed an Answer denying liability to the Plaintiff for any debts nondischargeable under § 523(a)(15). Both parties thereafter filed their respective motions for summary judgment, each seeking judgment in their favor pursuant to Rule 56 of the Federal Rules of Bankruptcy Procedure.[2]

## STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate "upon proper showings of the lack of genuine, triable issue of material fact . . . [and] is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*

---

[1] Except for within formal citations, references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

[2] Made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

*Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). "When faced with cross-motions for summary judgment, the court must review each motion separately on its on merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n. 4 (1st Cir. 1997)). When no underlying issue of material fact exists, the court need not consider each motion separately. *Harshbarger*, 122 F.3d at 62 n. 4.

## STATEMENT OF THE FACTS

The undisputed facts presented in this matter are quite simple. The Plaintiff and the Defendant were previously married but are now divorced. In 2016, the Defendant initiated in the District Court Division of Craven County, North Carolina ("State Court") an action against the Plaintiff for dissolution of marriage and distribution of marital assets and liabilities ("State Court Action"). On April 12, 2017, the parties participated in a mediated settlement conference and entered into an agreement ("Settlement Agreement") for custody of their minor child; payment of child support; and division of assets, liabilities, and expenses. The Settlement Agreement provides, *inter alia*, as follows:

13. [Plaintiff] agrees to pay the loan to State Employees' Credit Union in the amount of $25,516.86.

14. [Defendant] shall be responsible for all other marital debt, including the debt secured by the marital residence, the BB&T credit card, and the joint tax debt to the Internal Revenue Service.

15. [Defendant] shall have as his separate property the former marital residence located at 108 Batchelder Road, New Bern, NC. He shall be responsible for all debt secured by this property, including first mortgage and equity line, as well as taxes, insurance and maintenance.

The Settlement Agreement, signed by both parties and their domestic counsel, was incorporated into a Memorandum of Judgment/Order ("State Court Memorandum") entered by the

State Court on April 18, 2017. The State Court Memorandum was prepared from a civil form adopted by the North Carolina Administrative Office of the Courts which in blank provides as follows:

1. The parties to this lawsuit have reached an agreement to settle certain matters as set forth specifically in this memorandum and agree to be legally and mutually bound by the following terms and conditions: (*Attach additional pages as necessary*) [this section is followed by several blank lines]

2. A formal judgment/order reflecting the above terms will be prepared by and submitted no later than _____ for signature by a judge assigned to hold court in this district.

3. The parties stipulate to the following:

   (a) With the signing of this Memorandum by the presiding judge, this Memorandum shall become a judgment/order of the court and shall be deemed entered pursuant to Rule 58 of the North Carolina Rules of Civil Procedure on the date filed with the Clerk;

   (b) the provisions of this Memorandum are fair and reasonable, and each party has had ample opportunity to obtain legal advice concerning the legal effect and terms of this Memorandum;

   (c) this Memorandum is enforceable by the contempt powers of the court should any party not comply with its terms;

   (d) the formal judgment or order may be signed by the presiding judge out of term, session, county and district;

   (e) each party is satisfied with the services of the respective attorneys and believes that he/she has received competent advice regarding the signing of this Memorandum;

   (f) signatures of the parties on the formal judgment are not necessary;

   (g) the parties waive findings of fact and conclusions of law in the formal judgment/order memorializing this Memorandum; and

   (h) all attorneys shall be released as attorneys of record upon signing of the formal judgment or order by the presiding judge.

AOC-CV-220, New 4/97.

On the State Court Memorandum, "See attached Ex. A" is handwritten on the lines included within paragraph 1, and the Settlement Agreement is attached as "Exhibit A." Paragraph

2 is left blank as to a date by which a formal judgment shall be prepared and submitted,[3] and Paragraph 3, subsection (h) regarding release of attorneys is crossed out.  The State Court Memorandum is signed by the parties, their attorneys, the mediator, and the presiding judge.

On March 1, 2018, the Plaintiff filed in the State Court Action a Motion for Show Cause, alleging that the Defendant had failed to comply with the State Court Memorandum by, *inter alia*, failing and refusing to pay the following marital debts:  the debt owed to Branch Banking & Trust ("BB&T") secured by the marital residence; the debt owed to BB&T on a credit card account; and the debt owed to the Internal Revenue Service.  On March 2, 2018 the State Court entered a Show Cause Order directing the Defendant to appear before the State Court on March 19, 2018 and show cause, if any, why he should not be held in contempt for failure to comply with the State Court Memorandum.  This hearing was continued until May 16, 2018 and then stayed by the Defendant's bankruptcy petition filed prior to the hearing.

## DISCUSSION

The Bankruptcy Code provides that "[e]xcept as provided in section 523 . . . [a Chapter 7 discharge] discharges the debtor from all debts that arose before the date of the order for relief." 11 U.S.C. § 727(b).  Section 523 enumerates the types of debts that are excepted from a discharge granted to an individual debtor.  Providing a fresh start for honest debtors is one of the primary purposes of the Bankruptcy Code. *In re Donald*, 343 B.R. 524, 539 (Bankr. E.D.N.C. 2006).  The court must interpret narrowly discharge exceptions to protect a debtor's fresh start. *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999) (citing *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7, 9 (1st Cir. 1994)).

---

[3] The record does not indicate if or when the State Court entered a formal judgment.

Sections 523(a)(5) and (15) provide protection for certain obligations owing to a spouse, former spouse, or child of a debtor in bankruptcy. Section 523(a)(5) excepts from discharge a debt for a "domestic support obligation," which is defined as a debt in the nature of alimony, maintenance or support. *In re Edinger*, 518 B.R. 859, 864 (Bankr. E.D.N.C. 2014) (interpreting 11 U.S.C. § 101(14A) (other citations omitted)). Section 523(a)(15) further excepts a debt—

> to a spouse, former spouse, or child of the debtor and not of the kind described in [§ 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court record.

11 U.S.C. § 523(a)(15).

Section 523(a)(15) was added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994 "in an attempt to lessen the chance that a divorce obligee's claims might slip through § 523(a)(5)'s cracks and be discharged unjustly." *Dressler v. Dressler (In re Dressler)*, 194 B.R. 290, 300 (Bankr. D.R.I. 1996). The exception—

> expresses Congress's recognition that the economic protection of dependent spouses and children under state law is no longer accomplished solely through the traditional mechanism of support and alimony payments. State courts do not always draw a sharp distinction between support and property division in providing for the postdivorce economic security of dependent family members. Property settlement arrangements are often "important components of the protection afforded individuals who, during the marriage, depended on the debtor for their economic well-being."

4 *Collier on Bankruptcy* ¶ 523.23 (16th ed. rev. 2019) (quoting *Matter of Crosswhite*, 148 F.3d 879, 887 (7th Cir. 1998)). "By enacting § 523(a)(15), Congress manifested its intent that 'a debtor should not use the protection of a bankruptcy filing in order to avoid legitimate marital and child support obligations.'" *Sherman v. Proyect (In re Proyect)*, 503 B.R. 765, 773 (Bankr. N.D. Ga. 2013) (quoting H.R. Rep. No. 103-835, at 54 (Oct. 4, 1994), reprinted in 1994 U.S.C.C.A.N. 3340, 3363). The scope of § 523(a)(15) was narrowed by the Bankruptcy Abuse Prevention and

Consumer Protection Act of 2005, which added the requirement that the debt be owed to a spouse, former spouse, or child of the debtor.

This court recently analyzed § 523(a)(15) and noted that "[t]he phrase 'incurred by the debtor in the course of a divorce or separation' . . . has been interpreted to require the incurrence of a *new* debt in the course of a divorce or separation that was not in existence before the divorce." *Baum v. Baum (In re Baum)*, No. 14-00044-5-DMW, 2016 WL 5360709, at *12 (Bankr. E.D.N.C. Sept. 23, 2016), *aff'd* No. 5:16-cv-00840-FL (E.D.N.C. Sept. 29, 2017) (citations omitted) (emphasis in original). In *Baum*, the court recognized that a new debt obligation to a spouse or former spouse is created generally by a hold harmless or indemnification provision contained within a domestic order or agreement:

> [f]or example, a "new" debt is created between a debtor and his ex-spouse when, pursuant to a divorce decree, the debtor is ordered to assume a credit card debt incurred jointly during the marriage and ordered to hold the ex-spouse harmless for that debt. If the debtor fails to pay off the credit card after the divorce, and the credit card company seeks repayment from the non-debtor ex-spouse, the debtor would have to indemnify the ex-spouse pursuant to the hold harmless agreement, thus the creation of a "new" debt to the spouse.

*Id.* at *13 (quoting *Burton v. Burton (In re Burton)*, 242 B.R. 674, 678 (Bankr. W.D. Mo. 1999)). *See also Belcher v. Owens (In re Owens)*, 191 B.R. 669, 674-75 (Bankr. E.D. Ky. 1996) (holding that hold harmless language included within a property settlement agreement created a new obligation as contemplated by § 523(a)(15)).

The Settlement Agreement undisputedly does not contain an indemnification or hold harmless clause that applies to the marital debts agreed to be paid by the Defendant. The Defendant contends, therefore, that he has incurred no debt obligation owed to the Plaintiff. Relying on the case of *Wodark v. Wodark (In re Wodark)*, 425 B.R. 834 (10th Cir. B.A.P. 2010), the Plaintiff

7

counters that her right to indemnification is inherent in the Defendant's agreement to pay joint obligations.

*Wodark* presents similar facts in that the state court entered an order incorporating the terms of the parties' separation agreement, which "was made on a check-the-box and fill-in-the-blanks form promulgated by the Colorado state courts." *Id.* at 836. The section of this agreement which assigned responsibility for payment of identified marital debts contained the following form language: "The party responsible for the debts ☐ will ☐ will not (check one) indemnify the other party and hold him/her harmless for those debts." *Id.* Neither box was checked. The Chapter 7 debtor's ex-husband sought a determination that the debtor's obligation to pay a joint equity line of credit as set forth in the separation agreement was a nondischargeable debt to him under § 523(a)(15). The debtor (Glennette) defended that she owed the debt to the creditor (Chase), not her ex-husband (Thaddeus), and the debt to the creditor had been discharged. The United States Bankruptcy Court for the District of Colorado granted summary judgment in favor of the ex-husband, concluding that he was the intended beneficiary of the debtor's payments to the creditor, and the obligation was fully enforceable by a Colorado domestic court. The United States Bankruptcy Appellate Panel for the Tenth Circuit affirmed, and the Honorable Robert E. Nugent explained as follows:

> Glennette insists that she incurred no debt to Thaddeus. She argues that once it is clear that the agreement lacks an indemnity or hold harmless language, it should be discharged because the plain language of § 523(a)(15) requires the debt be owed to a former spouse, not a third party. In short, she argues that if there is no indemnity or hold harmless provision, she owes no debt to Thaddeus. We see several flaws in this analysis.
>
> Because Glennette was already obligated to pay the home equity line of credit, the idea that her agreement to pay was solely to benefit Chase renders that term mere surplusage. Glennette already owed Chase before she signed the separation agreement. When she signed the agreement, she undertook to do more than simply restate her obligation to Chase. Chase was not a signatory to the separation

8

>  agreement and nothing in it altered the Wodarks' contractual relations with Chase, though it significantly altered their legal relationship with one another. Glennette's agreement to pay Chase contained in the separation agreement had to have some legal import beyond simply restating her debt to the third party creditor.

*Id.* at 839.

Judge Nugent's analysis is well-reasoned, but the court disagrees that a party to a domestic agreement should be given the benefit of indemnification when the agreement is silent on that issue. The obligation burdening one party and benefiting another will not be assumed without a clear meeting of the minds and evidence of intent. Parties who settle a dispute, especially in contentious domestic matters, must be very clear in the documentation of the agreement. The lack of that recital in the written resolution between the parties is where this court diverts from *Wodark*. In *Wodark*, it is not clear whether the parties were represented by counsel in their negotiations, but the option for indemnification was presented to them very clearly on the form document, and they declined to make the election.

In this case, the parties were represented by counsel and reached the Settlement Agreement as part of a mediation. If either party desired a right to indemnification related to the marital debts, then that obligation could have and should have been included within the Settlement Agreement. Too often this court sees poorly drafted orders and settlement agreements that do not consider effects of the Bankruptcy Code upon the terms in these documents. Absent a right of indemnification in favor of the Plaintiff, the court will not speculate that the Defendant's agreement to pay certain marital debts was undertaken to provide support to the Plaintiff, and the terms of the Settlement Agreement suggest that the parties were simply seeking an equitable division of their debt. For instance, the Defendant agreed to pay all debt related to the marital residence, but the Defendant also obtained the benefit of continuing to live in this residence. The court would be more persuaded that the parties intended the division of marital debt to represent a

9

means of support if the Plaintiff stayed in the marital residence while the Defendant agreed to pay the associated debt. Additionally, the Plaintiff also assumed responsibility for paying debts by agreeing to pay the State Employees Credit Union. This assumption of debt liability is not consistent with the Plaintiff's claim for support.

The court finds further support under North Carolina equitable distribution law that a right of indemnification is not automatic. N.C. Gen. Stat. § 50-20(c)(1)[4] requires the court "to consider the liabilities of each party when making an equitable distribution [and] . . . to apportion or distribute the marital debts in an equitable manner." *Geer v. Geer*, 84 N.C. App. 471, 475, 353 S.E.2d 427, 429-30 (1987). An order for the equitable distribution of debts "*may* include a requirement that defendant reimburse plaintiff for such portion of the marital debt as the court finds equitable." *Rawls v. Rawls*, 94 N.C. App. 670, 676, 381 S.E.2d 179, 182-83 (1989) (emphasis added). With indemnification being discretionary, the court must assume that the absence of an indemnification provision in the Settlement Agreement is significant, and indemnification was intentionally excluded. The parties were assisted by a mediated settlement. Mediated settlements are generally very deliberate and allow the parties time to contemplate what is important in their agreement. Either the Plaintiff did not assert indemnification as a critical condition of the settlement, or the Defendant did not agree to it. Without that provision in the Settlement Agreement, a claim for support must fail.

---

[4] "There shall be an equal division by using net value of marital property and net value of divisible property unless the court determines that an equal division is not equitable. If the court determines that an equal division is not equitable, the court shall divide the marital property and divisible property equitably. The court shall consider . . . [t]he income, property, and liabilities of each party at the time the division of property is to become effective." N.C. Gen. Stat. § 50-20(c)(1) (2013).

The State Court Memorandum states that it is enforceable by the State Court's contempt powers should one of the parties not comply with the incorporated Settlement Agreement.[5] In North Carolina, civil contempt seeks to compel obedience with court orders, and a party may avoid the contempt by performing acts required by an order. *Watson v. Watson*, 187 N.C. App. 55, 61, 652 S.E.2d 310, 315 (2007) (citing *Bishop v. Bishop*, 90 N.C. App. 499, 504, 369 S.E.2d 106, 109 (1988); *O'Briant v. O'Briant*, 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985)). The State Court could only hold the Defendant in contempt for a failure to pay assumed marital debts to the named creditors, because the Settlement Agreement does not require indemnification. If the Plaintiff instead pays those debts, then she may have a contribution action against the Defendant for his contractual share pursuant to the terms of the credit or loan agreements; however, the right of contribution would not be a debt incurred within the course of the parties' divorce for purposes of § 523(a)(15). *See Proyect*, 503 B.R at 776 (holding that a divorce decree changed nothing about an existing right of contribution under Georgia law; therefore, no new rights arose, and no new debts were created).

## CONCLUSION

Within the State Court Action, the Plaintiff and the Defendant negotiated the Settlement Agreement and were assisted by counsel and a mediator. The Settlement Agreement became an order of the State Court by its incorporation into the State Court Memorandum. The Defendant's agreement to pay certain marital debts under the Settlement Agreement does not equate to automatic support to the Plaintiff. Whether purposefully or inadvertently, the Settlement

---

[5] The court notes that in *Wodark*, the decreed separation agreement was similarly, and perhaps more expansively, enforceable "by all remedies available for the enforcement of a judgment, including contempt." Co. St. § 14-10-112 (1999).

Agreement contains no indemnification or hold harmless provision relating to the division of marital debt between the parties. The right to indemnification is discretionary within North Carolina domestic orders, and absent an indemnification requirement, the State Court cannot order indemnification through its contempt powers. The Settlement Agreement does not create a new debt owed from the Defendant to the Plaintiff that can be excepted from his discharge pursuant to § 523(a)(15); now therefore,

It is ORDERED, ADJUDGED, and DECREED as follows:

1. The Plaintiff's Summary Judgment Motion be, and hereby is, denied;

2. The Defendant's Summary Judgment motion be, and hereby is, granted; and

3. Pursuant to Rule 58(a) of the Federal Rules of Civil Procedure,[6] judgment will be entered in favor of the Defendant declaring that the Defendant owes no nondischargeable debts to the Plaintiff pursuant to § 523(a)(15).

**END OF DOCUMENT**

---

[6] Made applicable to adversary proceedings pursuant to Rule 7058 of the Federal Rules of Bankruptcy Procedure.